# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF DELAWARE

| | |
|---|---|
| GUYZAR LLC, § § § | |
| Plaintiff § § | C.A. NO. 1:18-CV-01258 CFC |
| v. § § | |
| TRACFONE WIRELESS, INC. § § | |
| Defendant. § | |

## DEFENDANT TRACFONE WIRELESS, INC.'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

FISH & RICHARDSON P.C.
Jeremy D. Anderson (#4515)
222 Delaware Ave., 17th Floor
P.O. Box 1114
Wilmington, DE 19801
(302) 652-5070 (Telephone)
(302) 652-0607 (Facsimile)
janderson@fr.com

Neil J. McNabnay
William B. Collier
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070 (Telephone)
(214) 747-2091 (Facsimile)
mcnabnay@fr.com
collier@fr.com

**COUNSEL FOR DEFENDANT
TRACFONE WIRELESS, INC.**

Dated: November 13, 2018

**TABLE OF CONTENTS**

**Page**

I. Adding "On the Internet" To An Abstract Idea Does Not Save The Claims ....................... 1

II. Guyzar's "Specific Computer" Argument is Baseless ......................................................... 3

III. Guyzar Has Not Identified Any Inventive Concept ............................................................ 4

IV. Guyzar's Claim Construction Arguments Do Not Affect § 101 Analysis ........................... 6

V. Guyzar Did Not Plead That TracFone Directs or Controls A Third Party's Actions .......... 7

VI. Guyzar Has Not Pleaded That TracFone Conditions Receipt Benefit On Participation ... 10

VII. Conclusion ........................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) ........................................................................ 8, 10

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   134 S.Ct. 2347 (2014) ................................................................................. *passim*

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) .................................................................................. 2

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
   687 F.3d 1266 (Fed. Cir. 2012) .............................................................................. 5, 6

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ...................................................................................................... 2

*BSG Tech LLC V. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ........................................................................ 3, 4, 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) .................................................................................. 7

*DietGoal Innovations LLC v. Bravo Media LLC*,
   33 F. Supp. 3d 271 (S.D.N.Y. 2014) ........................................................................ 3

*Eli Lilly and Company, v. Teva Parenteral Medicines, Inc.*
   845 F.3d 1357 (Fed. Cir. 2017) ................................................................................ 11

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) .................................................................................. 1

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) .................................................................................. 5

*LBS Innovations, LLC v. Nokia USA Inc.*,
   No. 2:15-CV-1972-JRG, 2016 WL 3407611 (E.D. Tex. June 21, 2016) ................ 9

*Mortg. Grader, Inc. v. First Choice Loan Servs.*,
   811 F.3d 1314 (Fed. Cir. 2016) .................................................................................. 4

*OpenTV, Inc. v. Apple Inc.*,
   No. 5:15-cv-02008, 2016 U.S. Dist. LEXIS 10445 (N.D. Cal. Jan. 28, 2016) ......... 2

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*,
    No. 2:15-CV-1559-WCB, 2016 WL 2742379 (E.D. Tex. May 10, 2016),
    aff'd, 684 F. App'x 970 (Fed. Cir. 2017) .................................................................................6

*SmartGene, Inc. v. Advanced Biological Labs., SA*,
    555 F. App'x 950 (Fed. Cir. 2014) ........................................................................................4

*Ultramercial, Inc. v. Hulu*,
    LLC, 772 F.3d 709 (Fed. Cir. 2014) ......................................................................................6

*Voxathon LLC v. Alpine Elecs. of Am., Inc.*,
    No. 2:15-cv-562-JRG, 2016 WL 260350 (E.D. Tex. Jan. 20, 2016) ......................................4

Guyzar all but admits that the '070 patent is directed to an abstract idea, but limits performance of the idea to "on the internet." *Alice* made clear, however, that performing an abstract idea on the internet or with a computer does not raise the idea to the level of subject matter eligibility under § 101. Guyzar also cannot identify an inventive concept that could save its patent, and instead restates the abstract idea, untethered to any technological solution. Accordingly, Guyzar fails to refute that the '070 patent is directed to an abstract idea.

As to the infringement allegations, Guyzar's resort to inadequate theories of joint infringement do not save its case. Guyzar's Complaint does not set forth facts that could plausibly support that TracFone controls every step of the claimed methods of the '070 patent. Notably, the claims of the '070 patent cannot be infringed by a single actor. Guyzar's opposition (D.I. 15) affirms that three independent parties are required to infringe the asserted claims. Instead of fully explaining its joint infringement theory as to all parties, Guyzar insufficiently pleaded joint infringement between TracFone and the end user, ignoring the third party company necessarily involved in the claims. Because Guyzar fails to explain how TracFone forms a joint enterprise or otherwise controls any such third party, the Complaint should be dismissed.

## I.   Adding "On the Internet" To An Abstract Idea Does Not Save The Claims.

Guyzar's argument that the '070 patent is not abstract is based almost entirely on the premise that its claimed methods are performed "on the internet." This position is untenable under *Alice* and its progeny. It is well established that "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2358 (2014)) (limiting an abstract idea to a particular technological environment, such as a computer, does not confer patent eligibility); *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field

of use . . . d[oes] not make the concept patentable.")). Guyzar argues that the '070 patent is direct to "authenticating a user's confidential information and preserving such confidentiality when conducting a transaction on the internet." (D.I. 15 at 10.) This description is practically identical to TracFone's description of "confidentially authenticating a user," only with "on the internet" appended. (D.I. 6 at 10.) The difference in wording is irrelevant because "[a]n abstract idea can generally be described at different levels of abstraction." *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240 (Fed. Cir. 2016). Under either wording, "authenticating a user's confidential information and preserving such confidentiality when conducting a transaction" is an abstract idea. (*See* D.I. 6 at 6–13.) Guyzar's rewording cannot avoid the fact that its claims fail step one of the *Alice* test.

Guyzar also fails to distinguish similar invalid claims. *See, e.g.*, *OpenTV, Inc. v. Apple Inc.*, No. 5:15-cv-02008, 2016 U.S. Dist. LEXIS 10445, at *3 (N.D. Cal. Jan. 28, 2016). The *OpenTV* patent claimed, "loading an interactive application with an associated credential in the interactive television system, verifying the credential, and allowing an interactive application to perform one or more functions based on the permission information contained in the credential." *Id.* at *4–*5. The court explained that "[t]he practice of controlling access to information by verifying credentials (via well-known encryption methods to the text of the note) is neither novel nor specific to interactive television systems" and, therefore, directed to an abstract idea. *Id.* at *13. Further, "the steps recited in claim 1 and the components used to perform these steps are conventional and routine," and therefore, not inventive. *Id.* at *16–21. Guyzar's credential verifying claims merit the same outcome.

It is telling that Guyzar does not quote the claims in its Response, focusing instead on quotes from the specification, specifically the "Summary of the Invention" section. (D.I. 15 at 10.)

2

Claim 1 does not include many of the elements Guyzar contends shelter the patent from ineligibility, including a "buy order," "POP," or "framed IP" address, and the '070 patent explains that each of these components is a well known element of the prior art:

> Using well known point of presence (POP) the ID is submitted to an authentication server to check whether the ID is in the authentication server protocol database. Authentication will result in the POP issuing a pre-assigned framed user IP address. Thus the user is assigned a framed IP address in accordance with known Systems but there is absent any control relating it to the user's Confidential Information.

'070 patent 1:48-55. Thus, the claims of the '070 patent recite only the basics steps of the abstract idea of confidentially authenticating a user using generic computer components: (1) a database is created containing the user's confidential data associated with login information; (2) the user enters her login information to authenticate her identity; and (3) the database issues a code authenticating the user to a third party website without disclosing the user's confidential data. Guyzar's opposition amounts to arguing that the abstract idea itself is inventive, but that does not save the claims from ineligibility. *See BSG Tech LLC V. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.").

II.     **Guyzar's "Specific Computer" Argument is Baseless.**

Guyzar contends that its claims are non-abstract because they require implementation on "specific databases and specific software to generate specific functions." (D.I. 15 at 12.) Not so. This argument relies exclusively on the claims purportedly requiring a "well-defined database," but a database is one of the most well-known and conventional elements of computer technology. *See, e.g.*, *DietGoal Innovations LLC v. Bravo Media LLC*, 33 F. Supp. 3d 271, 287 (S.D.N.Y. 2014) ("[R]etrieving information from a stored database [is] one of the most basic functions of the generic computer."); *Mortg. Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1324 (Fed.

3

Cir. 2016) (describing databases as "generic computer components"). And using a database to store data is using it for its "ordinary capacity" and does not confer eligibility. *BSG Tech*, 899 F.3d at 1288 (holding patent abstract in part because the claimed "database serves in its 'ordinary capacity' of storing the resulting information").

Even if Guyzar's claimed database was special (it is not), the elements Guyzar describes as forming the "well-defined database" are all prior art components:

> Presently available dial-up Services will accept a user's **personal identification number (ID) or other identifying password** to bridge a proprietary communication line with Internet. Using well known point of presence (POP) the ID is submitted to an authentication server to check whether the ID is in the authentication server protocol database. Authentication will result in the POP issuing a pre-assigned **framed user IP address**.

'070 patent 1:45-52 (emphasis added). Computerized claims that do "no more than call on a 'computing device,' with basic functionality for comparing stored and input data and rules" are not patent eligible. *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 954 (Fed. Cir. 2014). The '070 patent does just that: it claims a database for its ordinary capacity. Contrary to Guyzar's arguments, there is no "special computer" in the claims.

### III.  Guyzar Has Not Identified Any Inventive Concept.

Guyzar has not carried its burden of explaining what, if any, inventive concept is present in the '070 patent. *See Voxathon LLC v. Alpine Elecs. of Am., Inc.*, No. 2:15-cv-562-JRG, 2016 WL 260350, at *4 (E.D. Tex. Jan. 20, 2016) (analyzing patent eligibility under Rule 56) ("Since the proving of a negative is historically disfavored, once Defendants make a *prima facie* showing that an inventive concept is absent, it falls upon [plaintiff] to show that there is, in fact, an inventive concept actually present."). Instead, Guyzar's primary strategy at step two of the *Alice* analysis is to attack TracFone's position and offers little explanation of any inventive concept of the '070 patent.

4

To the extent Guyzar identifies an inventive concept, it relies on concepts that "neither improve the functions of the computer itself, nor provide specific programming, tailored software, or meaningful guidance for implementing the abstract concept" *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017). Guyzar admits that claim 1 relies on a database and two servers, (Resp. at 13), but contends that giving access "without requiring the entry of a password or other identification information" is inventive. (D.I. 15 at 14.) This concept fails step two of *Alice*.

First, Guyzar's description is misleading. Claim 1 requires entry of a password and identification information with its first data set. *See* '070 patent 2:11-13 ("The security process is initiated when the user logs onto the Internet using an ID and a password which represents a first data set.") Guyzar did not invent or claim a method to eliminate passwords.

Second, Guyzar's concept represents the abstract idea itself: confidentially authenticating a user by relying on a third party, in this case by issuing a second form of identification when the first form checks out. "To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). As TracFone explained and Guyzar has not refuted, confidentially authenticating an identity is a human activity that predates computers. (*See* D.I. 6 at 7 (explaining that buyers using agents, speakeasies with passwords, and tickets and passports at airports are all examples of issuing a "second data set subject to the validation of a first data set" where certain confidential information does not need to be disclosed to the primary party).) Nothing in the Response plausibly alleges that the '070 patent's claims "facilitate[] the process in a way that a person making calculations or computations could not." *Bancorp Servs., L.L.C. v. Sun*

5

*Life Assurance Co. of Canada*, 687 F.3d 1266, 1278 (Fed. Cir. 2012). Instead, Guyzar's apparent inventive concept "simply describe[s] [the] abstract method" and does not transform the abstract idea into patentable subject matter. *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014); *see also BSG Tech*, 899 F.3d at 1290.

**IV.   Guyzar's Claim Construction Arguments Do Not Affect The § 101 Analysis**

Claim construction is not necessary for the Court to decide any aspect of TracFone's § 101 Motion. The "Federal Circuit has made it clear that, in appropriate cases, district courts may decide the issue of patent eligibility without first conducting claim construction." *See Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*, No. 2:15-CV-1559-WCB, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016), aff'd, 684 F. App'x 970 (Fed. Cir. 2017). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required in order to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

First, Guyzar failed to provide any proposed constructions for the terms it identifies. For "accessing the Internet," Guyzar seems to argue claim construction with itself. (D.I. 15 at 16 ("may be uncertain whether the standard medium refers to control modems and communications protocols, or another system to input an id and password.").) And for "consummating the transaction," Guyzar points to unclaimed acts to try to confuse the issue, arguing that an embodiment involving sending a bill is somehow relevant to the claimed embodiment. (*Id.*) These arguments highlight the overbreadth of the claims and further support TracFone's § 101 arguments. They do not confer eligibility.

6

Second, Guyzar does not explain how construction of these terms will affect the § 101 analysis. Arguing that claim construction is necessary without explaining why is insufficient to pass § 101 muster at this stage. Nonetheless, should Guyzar offer plausible constructions that it argues would render the claims patent-eligible under § 101, the Court can rule on the Motion under the constructions proposed by Guyzar for the limited purpose of determining whether the asserted claims recite patent-eligible subject matter. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (finding the patent invalid under § 101 after construing all terms identified by the plaintiff "in the manner most favorable to [the plaintiff]"). It makes no difference here because Guyzar has not and cannot identify any plausible construction that would affect the § 101 analysis.

V.  **Guyzar Did Not Plead That TracFone Directs Or Controls A Third Party's Actions.**

Guyzar waves its hands attempting to save its case, but ignores the major error in its direct infringement allegations: regardless of whether TracFone "controls" the user, there are no plausible facts suggesting that TracFone "direct[s] or control[s] certain third parties in their performance of the claimed method." (D.I. 15 at 1.) Thus, those companies' actions cannot be attributed to TracFone. Guyzar does not rebut this position in the Response.

The joint infringement pleading requirements are well established. Guyzar must allege plausible facts that support the conclusion that TracFone either controls both the end user and third parties or forms a joint enterprise with them:

> Where more than one actor is involved in practicing the steps [of a method claim], a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement. [The law] will hold an entity responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise.

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). As the

Federal Circuit has explained, a joint enterprise requires proof of four elements:

    (1) an agreement, express or implied, among the members of the group;
    (2) a common purpose to be carried out by the group;
    (3) a community of pecuniary interest in that purpose, among the members; and
    (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Id.* at 1023. Alternatively, parties can jointly infringe when "an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.*

    Guyzar's explanation of the accused system shows the problems of the allegations. Guyzar's description of a disembodied "OAuth system" acting on its own hides the fact that this system is set up by and relies on the actions of third parties. According to Guyzar, "the claimed OAuth system accesses the Internet," "the claimed OAuth system also utilizes the OAuth standard," "the claimed OAuth system submits a first data set," "the database can be established in an Authorization Server and Resource Server of the claimed OAuth system," "the claimed OAuth system compares the user's first data set," and "the claimed OAuth system issues a second data set." (D.I. 15 at 2-4.) Guyzar does not attribute any of these actions to any real actor, much less to a single actor under any appropriate theory of joint infringement.

    Of course, Guyzar does not want to explain who performs these steps because it cannot plead direct infringement. Applying Guyzar's allegations against TracFone in the context of the "Protocol Flow" diagram upon which Guyzar relies illustrates the division of roles in the '070 patent's claims:



(D.I. 15 at 4 (excerpted and annotated).) Of the four subparts of the accused OAuth 2.0 system, TracFone allegedly controls only one part of the systems as the "Client." Each of the actions quoted above that Guyzar attributed to "the claimed OAuth system" are necessarily performed by the third party or end-user. After all, the OAuth system cannot maintain confidentiality from TracFone if TracFone creates the database with the confidential information.

Guyzar correctly surmises that its direct infringement claims could only exist under a theory of joint or divided infringement in which the actions of both the user and the third party are attributed to TracFone. Guyzar does not, however, address joint infringement between TracFone and the third party necessary to infringe the claims. Instead, Guyzar focuses entirely on the user. Thus, Guyzar "has failed to plausibly set forth a joint enterprise theory of divided infringement because (1) the Complaint does not establish the plausibility of an enterprise in which the members [(allegedly, TracFone and a third party)] share an equal right of control and (2) the Complaint fails to include any facts in its pleading suggesting a community of pecuniary interest." *See LBS Innovations, LLC v. Nokia USA Inc.*, No. 2:15-CV-1972-JRG, 2016 WL 3407611, at *3 (E.D. Tex. June 21, 2016).

The Complaint also omits any allegation that TracFone "conditions participation in an

9

activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance" such that the actions of the ***third party*** (*e.g.* Facebook) are attributable to TracFone. The Response also does not explain of how TracFone directs or controls the third parties.[1] Indeed, the Response is completely silent on this point. Moreover, this allegation is implausible, because it requires TracFone to effectively control the actions of entities like Facebook.

Controlling the end user alone is not sufficient for infringement of the '070 patent because certain steps are performed by a third party (e.g., Facebook). Moreover, amending the Complaint to plead these facts would be futile because TracFone simply does not direct or control any third party necessary to allege infringement of the claims. Therefore, Guyzar's direct infringement allegations should be dismissed with prejudice

## VI.     Guyzar Has Not Pleaded That TracFone Conditions Receipt Benefit On Participation.

Though it would not save Guyzar's case, TracFone also does not control the user. Guyzar misleadingly describes the benefit of the accused system as something other than TracFone's product. (D.I. 15 at 15 ("[Defendant] directs or controls the acts of end-users in such a manner as to condition participation in an activity or receipt of a benefit—in this case, receiving updates from [Defendant] without having to share or create an email or password . . . .").)

Unlike in *Akamai*, where "if [defendant]'s customers wish[ed] to use [defendant]'s product, they must tag and serve content," *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1024 (Fed. Cir. 2015), the Complaint alleges that a user can simply create an account and access TracFone's product without using the accused systems. (*See* D.I. 1 ¶ 14, Fig. 3 (including an option

---

[1] Though Guyzar alleges that "TracFone also establishes the manner or timing of the third-parties' actions" in the Response, Guyzar only addresses third-party end-users. (D.I. 15 at 19.)

to sign in with an email and password).) The Complaint also does not plausibly allege that a user would "receive updates" without providing an email address or can access Defendant's products without an email address. Thus, the Complaint establishes that a user receives the same benefit logging in with the accused system as they do when logging in normally. In other words, Guyzar has not pleaded joint infringement with respect to a user either because there is no allegation that TracFone conditions a user's receipt of a benefit ***provided by TracFone*** on completion of the claimed steps.

This situation is analogous to *Eli Lilly and Company, v. Teva Parenteral Medicines, Inc.* 845 F.3d 1357, 1365-68 (Fed. Cir. 2017). There, the Federal Circuit explained that the defendant did "not deny users the ability to use [defendant's services] without performance of the claim step . . . ." The Federal Circuit noted that the defendant benefitted when its customers used its devices, regardless of whether they performed the claimed "detachment" step. *Id.* Because the defendant allowed its customers to freely use the accused system regardless of whether the claimed step was performed, defendant did not deny any benefit to its customers for not practicing the claimed invent. *Id.* The same is true here. The Complaint illustrates that users can access TracFone's website both through traditional login and through use of the accused system. (D.I. 1, Fig. 3.) TracFone thus benefits regardless of how users access the site, and users are not denied any benefit regardless of how they choose to login. Accordingly, the users' actions cannot be attributed to TracFone.

## VII.   Conclusion

For the foregoing reasons, TracFone respectfully requests that the Court dismiss Guyzar's Complaint for failure to state a claim upon which relief can be granted. Because leave to amend would be futile, Defendant requests dismissal with prejudice.

| | |
|---|---|
| Dated: November 13, 2018 | Respectfully submitted,<br><br>FISH & RICHARDSON P.C.<br><br>By: /s/ *Jeremy D. Anderson*<br>Jeremy D. Anderson (#4515)<br>222 Delaware Avenue, 17th Floor<br>Wilmington, Delaware 19801<br>(302) 652-5070 (Telephone)<br>(302) 652-0607 (Facsimile)<br>janderson@fr.com<br><br>Neil J. McNabnay<br>Texas Bar No. 24002583<br>mcnabnay@fr.com<br>William B. Collier<br>Texas Bar No. 24097519<br>collier@fr.com<br>FISH & RICHARDSON P.C.<br>1717 Main Street, Suite 5000<br>Dallas, Texas 75201<br>(214) 747-5070 (Telephone)<br>(214) 747-2091 (Facsimile)<br><br>***COUNSEL FOR DEFENDANT***<br>***TRACFONE WIRELESS, INC.*** |